# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| JOEL Z. HYATT and ALBERT A. GORE, JR.,<br><br>Plaintiffs,<br><br>v.<br><br>AL JAZEERA AMERICA HOLDINGS II, LLC and AL JAZEERA INTERNATIONAL (USA) INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 11465-VCG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Date Submitted:  December 15, 2015
Date Decided:  March 31, 2016

Gregory V. Varallo, Rudolf Koch, and Kevin M. Gallagher, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE, *Attorneys for the Plaintiffs*.

John L. Reed, of DLA PIPER LLP (US), Wilmington, DE; OF COUNSEL:  Andrew L. Deutsch, of DLA PIPER LLP (US), New York, NY, *Attorneys for the Defendants*.

GLASSCOCK, Vice Chancellor

Advancement cases in this Court tend to follow a familiar pattern. An employer offers a prospective employee an incentive: a right to advancement for litigation costs arising from her employment, even where that litigation is brought by the hiring entity itself. Later, the employer has reason to sue the employee. The employee seeks to exercise her right to advancement, and a kind of "hirer's remorse" sets in with the employer, which objects to funding both sides of the litigation. The employer therefore resists advancement, leading to litigation of the advancement right before this Court.

The matter before me here involves a twist on this pattern. The employees are former directors and a former officer of Current Media, LLC and have advancement rights via the company's operating agreement with respect to litigation arising out of that status. The entity resisting advancement, however, is not the former employer—Current—but the acquirer of that entity, Al Jazeera International (USA) Inc., and its related companies. Al Jazeera's obligations arise only indirectly from Current's operating agreement. In the merger agreement by which Al Jazeera acquired Current, however, it agreed to honor those advancement obligations to the extent Current would have been so obligated.

In a separate underlying action, the employees, Joel Hyatt and Albert Gore, Jr., sued Al Jazeera not as former employees of Current but as members' representative and member of Current, seeking the release, to the former members

1

of Current, of money in an escrow fund created pursuant to the merger. The parties concede that those allegations did not trigger any advancement rights in favor of Hyatt and Gore. Al Jazeera, however, counterclaimed. It argued in part that Hyatt breached the Merger Agreement by denying the release of the funds in escrow, and that its claims to those funds is valid because Current had breached representations and warranties in the merger agreement leading to liability on the part of Al Jazeera. The underlying allegations of breaches of representations and warranties depend upon Al Jazeera's contention that Hyatt and Gore, *as directors and officers of Current*, had caused Current to breach so-called "most favored nation" clauses in contracts between Current and third parties.[1] Thus, the counterclaim results in the following scenario: Hyatt and Gore have a financial interest in appearing and defending their actions as officers and directors of Current who directed its dealings with third parties, because without such defense their right to funds in escrow (as well as the rights of other former members) will be forfeited. Under such a scenario, are Hyatt's and Gore's rights to advancement, as provided in Current's operating agreement and as assumed by Al Jazeera, triggered?

I conclude that the answer to that question is yes as to the majority of Al Jazeera's counterclaims. My reasoning follows.

---

[1] For a brief explanation of "most favored nation" clauses, see *infra* note 54.

# I. BACKGROUND

## A. *The Merger*

Plaintiff Joel Z. Hyatt is a former member and director of Current Media, LLC ("Current") and its former CEO.[2]  Plaintiff Albert A. Gore, Jr. is Current's former executive chairman and a former member.[3]  In December 2012, Current and Defendant Al Jazeera International (USA) Inc. ("Al Jazeera") entered into the Agreement and Plan of Merger (the "Merger Agreement") whereby Current became a wholly owned subsidiary of Al Jazeera (the "Merger").[4]  Hyatt and Gore resigned from their positions with Current prior to the closing of the Merger, which occurred in January 2013.  Hyatt, however, was appointed Members' Representative in the Merger Agreement, which required him to fulfill certain duties and responsibilities in accordance with the Merger Agreement.[5]

---

[2] Verified Amended and Supplemented Complaint ("Compl.") ¶ 8.

[3] *Id.* at ¶ 9.

[4] Transmittal Aff. of Scott B. Czerwonka, Esq. in Supp. of Defs.' Opening Br. in Supp. of Mot. for Summ. J., Ex. A ("Merger Agreement").  The Merger Agreement, dated December 5, 2012, was entered into by Al Jazeera International (USA) Inc., Current Media, LLC, and Cardinal Merger Sub, LLC. *Id.* at 1.  Current, according to the Plaintiffs, is a wholly owned subsidiary of Al Jazeera International (USA), Inc. and its name is now Al Jazeera America Holdings II, LLC ("AJII")—a named Defendant here.  Compl. ¶ 11.  According to the Defendants, Al Jazeera I, Inc. ("AJI") is the Al Jazeera affiliate that holds the rights and obligations under the Merger Agreement.  Defs.' Opening Br. in Supp. of Mot. for Summ. J. ("Defs' Opening Br.") 7.  The Defendants assert that the Plaintiffs wrongly name Al Jazeera International (USA) Inc. as a party to this action. *Id.* at 7 n.1.  Accordingly, the Defendants refer to AJI and AJII collectively as Defendant "Al Jazeera" throughout its briefing. *Id.* at 7.  To the extent the parties disagree that the appropriate Al Jazeera entities are named in this action, that issue has not been argued or briefed.  For the purposes of this Memorandum Opinion, I refer to all of the relevant Al Jazeera entities as "Al Jazeera" and need not specifically determine *which* Al Jazeera entity is the appropriate defendant.

[5] Merger Agreement § 9.1.

Pursuant to the Merger Agreement, a portion of the proceeds from the Merger were set aside to establish a General Indemnity Escrow Account (the "Escrow Fund") for purposes of satisfying damages associated with Current and suffered by Al Jazeera post-Merger.[6] The Merger Agreement describes the mechanism by which Al Jazeera can seek indemnification for those damages from the Escrow Fund. First, Al Jazeera is required to provide written notice—referred to as a "claim certificate"—to the Members' Representative,[7] who may contest the validity of the claim.[8] If Al Jazeera and the Members' Representative are unable to resolve the latter's objection, either party may bring an action in the courts of Delaware.[9] Eighteen months following the close of the Merger, Current's former members are entitled to their pro-rata share of the residual balance in the Escrow Fund.[10]

The Merger Agreement also provides that for a period of six years after the Merger, Al Jazeera agrees to indemnify and advance fees and expenses to Current's former officers and directors to the same extent such persons were indemnified by Current's Second Amended and Restated Operating Agreement, dated January 13, 2012 (the "Operating Agreement").[11]

---

[6] *Id.* at §§ 2.2, 8.3.
[7] *Id.* at § 8.8.
[8] *Id.* at § 8.9.
[9] *Id.*
[10] *Id.* at § 8.7.
[11] *Id.* at § 6.9; Transmittal Aff. of Christopher H. Lyons in Supp. of Pls.' Mot. for Partial Summ. J., Ex. 2 ("Operating Agreement").

4

*B. The Underlying Action*

Following the close of the Merger, Al Jazeera served five claim certificates (the "Claim Certificates") on Hyatt as Members' Representative, demanding indemnification for several claims, including damages arising from alleged breaches by Current of representations and warranties in the Merger Agreement. In many of the Claim Certificates, Al Jazeera alleges that Current, at the time of the Merger Agreement, had breached the most-favored-nations ("MFN") provisions in three of its distributor agreements, but that Current had represented in the Merger Agreement that it was in compliance with its MFN provisions. Upon receiving the Claim Certificates, Hyatt, as Members' Representative, rejected the claims.

On August 15, 2014, Hyatt and Gore initiated an action in this Court (the "Underlying Action"),[12] contending in large part that Al Jazeera's Claim Certificates are improper and thus represent a breach of the Merger Agreement. In relief, Hyatt and Gore[13] seek invalidation of the Claim Certificates and an award for the balance of the Escrow Fund. On September 11, 2014, Al Jazeera[14] filed counterclaims in the

---

[12] *Gore v. Al Jazeera Am. Holdings, I*, C.A. No. 10040-VCG (Del. Ch.).

[13] It is unclear as to why Gore is named as a plaintiff in the Underlying Action.

[14] In the Underlying Action, Hyatt and Gore filed suit against Al Jazeera America Holdings I, Inc.—the Al Jazeera entity I refer to as "AJI"—which entity the Defendants assert holds the rights and obligations arising from the Merger Agreement. *See supra* note 4. I note that AJI is not a party to this action. However, as I've already stated, I refer to all of the Al Jazeera entities collectively for purposes of this opinion and similarly do so when referring here to the defendant in the Underlying Action.

5

Underlying Action (the "Counterclaims")[15] arguing that Hyatt breached the Merger Agreement by rejecting the Claim Certificates, which Claim Certificates, it asserts, are valid and should be upheld pursuant to the Merger Agreement. In relief, Al Jazeera seeks (1) an order suspending distribution of the balance of the Escrow Fund pending resolution of the Underlying Action; (2) an order directing the counterclaim-defendants—Hyatt and Gore—to indemnify Al Jazeera for the damages requested in the Claim Certificates; (3) compensatory damages for injuries suffered as a result of Hyatt's and Gore's alleged breaches of contract; and (4) attorneys' fees and costs. The Underlying Action remains pending as of the date of this Memorandum Opinion.

*C. This Advancement Action*

The Plaintiffs filed their Verified Amended and Supplemental Complaint (the "Complaint") on October 1, 2015, alleging four counts for advancement and one count for fees and expenses incurred in pursuit of litigating its advancement claims—the latter of which, I note, is commonly referred to as "fees on fees." Shortly thereafter, the parties entered into a confidential settlement agreement, pursuant to which the parties agreed to dismiss three of the four counts seeking

---

[15] *Gore v. Al Jazeera Am. Holdings, I*, C.A. No. 10040-VCG (Del. Ch. Sept. 11, 2014) (ANSWER AND COUNTERCLAIM) ("Counterclaims ¶ __").

6

advancement,[16] leaving before me a single count for advancement (Count Four) and a related count for "fees on fees" (Count Five).

In Count Four, the Plaintiffs allege that under the terms of the Merger Agreement and Current's Operating Agreement, Hyatt and Gore are entitled to advancement of the litigation costs associated with defending the Counterclaims in the Underlying Action. Pursuant to Count Four, the Plaintiffs seek an order (1) declaring that Hyatt and Gore are entitled to advancement for the Counterclaims raised in the Underlying Action; (2) declaring that Current and Al Jazeera are liable to Hyatt and Gore for advancement for their defense of the Counterclaims in the Underlying Action; and (3) ordering Current and Al Jazeera to pay Hyatt and Gore their fees and expenses for defending against the Counterclaims raised in the Underlying Action—totaling $1,731,285.99 at the time of the Complaint—plus pre- and post-judgment interest. In Count Five, the Plaintiffs allege that they are entitled to "fees on fees" for the fees and expenses associated with prosecuting this action.

All parties moved for summary judgment on the issue of the Plaintiffs' entitlement to, and the Defendants' liability for, advancement. The parties have requested that I only address the issue of liability.[17] I honor that request in this Memorandum Opinion. The parties have agreed to confer on a procedure to address

---

[16] *See Hyatt v. Al Jazeera Am. Holdings II, LLC*, C.A. No. 11465-VCG (Del. Ch. Jan. 15, 2016) (ORDER).
[17] Opening Br. in Supp. of Pls.' Mot. for Partial Summ J. ("Pls' Opening Br.") 4.

the reasonableness of the requested fees and expenses, if necessary, after the resolution of the cross-motions for summary judgment.[18]

I heard oral argument on the cross-motions on November 24, 2015. At oral argument, the Defendants clarified that, in spite of its Counterclaims in the Underlying Action, which are drafted to seek to impose liability on Hyatt and Gore personally, they do not seek relief beyond the balance of the Escrow Fund.[19] Al Jazeera is now judicially estopped from contending otherwise, and I consider the Counterclaims amended accordingly. Shortly after oral argument, I asked the parties for supplemental briefing, which is complete.[20] This is my Memorandum Opinion.

## II. STANDARD OF REVIEW

Summary judgment shall be granted when the moving party shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[21] "[A]dvancement proceedings are by statute summary proceedings and . . . summary judgment practice is an efficient and appropriate method to expeditiously resolve advancement disputes."[22] Where, as is

---

[18] *Id.* at 4 n.1.

[19] Oral Argument Tr. 6:12–15 ("COURT: Do the counterclaims in the underlying suit seek to recover beyond the escrow account? MR. REED: They do not.").

[20] Following oral argument, I asked the parties to submit supplemental letter memoranda on whether Section 9.5 of the Merger Agreement is relevant to the issue of advancement.

[21] Ct. Ch. R. 56(c).

[22] *Sun-Times Media Grp., Inc. v. Black*, 954 A.2d 380, 388 (Del. Ch. 2008) (citations omitted); *see also Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Holding Co., LLC*, 853 A.2d 124, 126–27 (Del. Ch. 2004) ("Summary judgment is an appropriate way to resolve advancement disputes because 'the relevant question turns on the application of the terms of the corporate

8

the case here, the parties file cross-motions for summary judgment and have not argued that a material issue of fact exists, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[23]

## III. ANALYSIS

In this action, Hyatt and Gore seek advancement of fees and expenses to defend against the Counterclaims raised by Al Jazeera in the Underlying Action. As the Plaintiffs point out, Al Jazeera agreed in the Merger Agreement to advance fees and expenses to Current's former officers and directors to the fullest extent provided in the Operating Agreement. Because the Counterclaims require Hyatt and Gore to defend actions taken while acting in their capacity as former officers and directors, Plaintiffs argue that Al Jazeera is liable for the fees and expenses incurred thereby. While Al Jazeera does not dispute that it agreed to advance fees and expenses to Current's former officers and directors, it argues that its Counterclaims are alleged against Hyatt in his capacity as Members' Representative only, and that, in such capacity, Hyatt is not entitled to advancement in accordance with the Merger Agreement. Furthermore, Al Jazeera describes Gore's role in the Underlying Action

---

instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is sought.'") (quoting *Weinstock v. Lazard Debt Recovery GP, LLC*, 2003 WL 21843254, at *2 (Del. Ch. Aug. 1, 2003)).
[23] Ct. Ch. R. 56(h).

9

as a mere fortuity, arguing that Gore is a party to the action solely in his capacity as a former member of Current, in which capacity he is not entitled to advancement.

While the issue of advancement implicates important policy concerns of the ability of Delaware corporations to attract and retain talented officers and directors,[24] the questions raised in this case largely turn on the interpretation of the Merger Agreement. Accordingly, I begin my analysis by reviewing the relevant provisions of the Merger Agreement. In light of the parties' intentions, as reflected therein, the second part of my analysis will examine the pleadings in the Underlying Action to determine whether the costs of defending the Counterclaims are advanceable.

*A. The Merger Agreement*

The Merger Agreement, according to its terms, displaces all prior agreements between the parties and is therefore the chief expression of their intent.[25] Section 8 of the Merger Agreement governs the use of the Escrow Fund for indemnification. Pursuant to Section 8.9 of the Merger Agreement, upon submission of a claim

---

[24] *See generally*, *Marino v. Patriot Rail Co. LLC*, — A.3d —, 2016 WL 885576, at *13 (Del. Ch. Feb. 29, 2016) (stating that the public policy foundation for advancement and indemnification rights "is to 'encourage capable men [and women] to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve'") (quoting *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002)).

[25] Merger Agreement § 11.5 ("This Agreement, the Company Disclosure Letter and the exhibits and other documents referred to herein contain the entire agreement among the parties hereto with respect to the Merger and the other transactions contemplated hereby and supersede all prior agreements with respect thereto, whether written or oral, except to the extent specifically set forth herein or therein.").

10

certificate by Al Jazeera, the Members' Representative may challenge the claim within twenty business days.[26] If the parties do not resolve the claim within thirty days of the Members' Representative's objection, either Al Jazeera or the Members' Representative may bring suit in the state or federal courts in Delaware.[27] Section 8.9(d) specifically provides for shifting of fees and expenses upon any judgment of the court. That section states, in part, that "[t]he non-prevailing party to a suit shall pay its own fees and expenses and the fees and expenses of the prevailing party, including attorneys' fees and costs reasonably incurred in connection with such suit."[28]

Al Jazeera argues that the fee-shifting provision in Section 8.9(d) reflects the parties' intention to solely provide indemnification—and therefore not advancement—for all actions brought against the Members' Representative to resolve disputes regarding the Escrow Fund. It is Al Jazeera's position, therefore, that the terms of the Merger Agreement preclude advancement of fees for claims brought against Hyatt in his capacity as Members' Representative. Conversely, the Plaintiffs argue that Section 8.9(d) addresses only the shifting of fees following the final resolution of a dispute concerning the Escrow Fund and is otherwise silent as to advancement. Furthermore, the Plaintiffs argue that advancement is specifically

---

[26] *Id.* at § 8.9(a).
[27] *Id.* at § 8.9(b)–(c).
[28] *Id.* at § 8.9(d).

provided in Section 6.9(a) of the Merger Agreement, which provides that Al Jazeera

will indemnify and advance expenses to Current's former officers and directors to

the extent provided in the Operating Agreement. Section 6.9(a) states, in part, the

following:

> (a) For a period of six (6) years from and after the Closing Date, [Al Jazeera] agrees to indemnify (*including advancement of expenses*) and hold harmless all past and present officers and directors of [Current] or any of its Subsidiaries *to the same extent* such persons are indemnified by [Current] or such Subsidiary as of the date hereof pursuant to (i) [Current's] Organizational Documents or such Subsidiary's Organizational Documents . . . .[29]

Accordingly, the Plaintiffs contend that Current's Operating Agreement controls the

determination of whether Hyatt and Gore are entitled to advancement.

At the heart of the contractual dispute here is whether, and in what

circumstances, the parties intended Section 8.9(d) or Section 6.9(a) of the Merger

Agreement to control the reimbursement of fees and expenses incurred to defend the

Counterclaims alleged in the Underlying Action. In order to determine the intent of

the parties, this Court "reads an agreement as a whole to give effect to each term and

to harmonize seemingly conflicting terms."[30]

---

[29] *Id.* at § 6.9 (emphasis added).

[30] *Stockman v. Heartland Indus. Partners, L.P.*, 2009 WL 2096213, at *6 (Del. Ch. July 14, 2009) (citing *Council of the Dorset Condo. Apartments v. Gordon*, 801 A.2d 1, 7 (Del. 2002)); *see also Julian v. E. States Constr. Serv.*, 2008 WL 2673300, at *7 (Del. Ch. July 8, 2008) ("[W]hen interpreting a contractual provision, a court attempts to reconcile all of the agreement's provisions when read as a whole, giving effect to each and every term."); *Delta & Pine Land Co. v. Monsanto Co.*, 2006 WL 1510417, at *4 (Del. Ch. May 24, 2006) ("[C]ontracts must be interpreted in a manner that does not render any provision illusory or meaningless.") (quotations omitted); *In re*

12

Al Jazeera argues that Section 8.9(d) displaces Hyatt's advancement rights in Section 6.9(a) because Hyatt is sued in the Underlying Action in his capacity as Members' Representative. I disagree with Al Jazeera's interpretation of the Merger Agreement, however. The first issue is whether the fee-shifting provision in Section 8.9(d), by itself, supplants the provision for advancement in Section 6.9(a). The "fee-shifting"—or indemnification—provision in Section 8.9(d), as I read it, is distinct from the right to advancement provided in Section 6.9(a). Although indemnification and advancement rights are closely related, each are "distinct types of legal rights,"[31] and the "right to advancement is not ordinarily dependent upon a determination that the party in question will ultimately be entitled to be indemnified."[32] Therefore, the language in Section 8.9(d) does not displace the right to advancement in Section 6.9(a). A contrary finding would eviscerate the covenant in Section 6.9(a) to provide advancement to the "*same extent*" as provided in the Operating Agreement,[33] assuming advancement rights in the latter are triggered here.

---

*Cencom Cable Income Partners, L.P. Litig.*, 2000 WL 640676, at *5 (Del. Ch. May 5, 2000) ("In order to discern the intent of the parties, the contract should be read in its entirety and interpreted to reconcile all of the provisions of the agreement.").

[31] *Senior Tour Players 207 Mgmt Co. LLC*, 853 A.2d at 128 (citing *Nakahara v. NS 1991 Am. Trust*, 739 A.2d 770, 779 (Del. Ch. 1998)).

[32] *Id.* (citing *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *9 (Del. Ch. June 18, 2002) (noting that "the clear authorization of advancement rights presupposes that the corporation will front the expenses before any determination is made of the corporate official's ultimate right to indemnification").

[33] The right to advancement, I note, is extended only for a period of six years from the closing of the Merger.

The second aspect of Al Jazeera's argument is that Hyatt is sued in his capacity as Members' Representative and not as a former officer and director, thus precluding application of Section 6.9(a). Hyatt's role as Members' Representative is separate from his former role as officer and director, however—the latter does not eliminate the former, and his rights in each role are preserved in accordance with the Merger Agreement.[34] As I have already stated, the fee-shifting provision in Section 8.9(d) is distinct from, and does not conflict with, the right to advancement for officers and directors in Section 6.9(a). What's more, Al Jazeera agreed to select Hyatt, a former officer and director of Current, as Members' Representative in the Merger Agreement.[35] The parties could have, but chose not to, exempt Hyatt from the right to advancement in his capacity as former officer and director as provided in Section 6.9(a) of the same agreement. The fact that Hyatt is sued in his capacity as Members' Representative, therefore, does not displace his rights as a former officer and director as otherwise provided in the Merger Agreement. Accordingly, Hyatt (as well as Gore) is entitled to advancement as a former officer and director to the extent provided in Section 6.9(a).

---

[34] The same reasoning applies to Section 9.5 of the Merger Agreement. Section 9.5 provides that Current's former members agree to "indemnify, defend and hold harmless" the Members' Representative against certain damages, including "legal costs and expenses of defending the Members' Representative against any claim . . . in connection with the performance of the Members' Representative's duties under [the Merger Agreement]." Merger Agreement § 9.5. Like Section 8.9(d), the rights and obligations in Section 9.5 are distinct from the right to advancement provided to former officers and directors by Section 6.9(a).

[35] *Id.* at § 9.1.

14

*B.     Advancement*

In accordance with Section 6.9(a) of the Merger Agreement, Hyatt and Gore are entitled to advancement to the extent they would have been so entitled under Current's Operating Agreement.  Section 11.2 of the Operating Agreement, which confers the right to indemnification, states, in part, the following:

> [E]ach person who was or is made a party or is threatened to be made a party to or is involved in any threatened, pending or completed action, suit or proceeding . . . *by reason of the fact* that he, or a Person of who he is the legal representative is or was a member of the Board of Directors or officer of [Current] . . . shall be indemnified by [Current] to the fullest extent permitted by the [Delaware Limited Liability Act] . . . against . . . costs, damages, and reasonable expenses (including, without limitation, attorneys' fees) incurred by such Person in connection with having served in such capacity, and indemnification under this Section 11.2 shall continue as to a Person who has ceased to serve in the capacity that initially entitled such Person to indemnify hereunder.[36]

The next section confers the right to advancement.  Section 11.3 states, in part, the following:

> The right to indemnification conferred in this Article 11 *shall include* the right to be paid or reimbursed by [Current] the reasonable expenses incurred by a Person *of the type entitled to be indemnified* under this Article 11 who was, is or is threatened to be made a named defendant or respondent in a Proceeding in advance of the final disposition of the Proceeding and without any determination as to the Person's ultimate entitlement to indemnification.[37]

When read together, Sections 11.2 and 11.3 provide a former officer or

---

[36] Operating Agreement § 11.2 (emphasis added).
[37] *Id.* at § 11.3 (emphasis added).

15

director who was, is, or is threatened to be made a named defendant in a proceeding a right to reimbursement of reasonable expenses incurred "by reason of the fact" that he is or was a member of the Board of Directors or officer of Current. As a threshold matter, the parties agree that Hyatt and Gore would not be entitled to advancement had they not been named as counterclaim-defendants in the Underlying Action. The parties also agree that, while Current was a limited liability company not subject to the Delaware General Corporate Law ("DGCL"),[38] the Operating Agreement confers advancement to former officers and directors that incur expense "by reason of the fact" that he was a former officer and director—a standard that tracks the language of Section 145 of the DGCL that grants a corporation the authority to provide indemnification.[39] Based on the clear language in those sections of the Operating Agreement, and bolstered by the fact that both parties utilized this Court's discussions of Section 145 in their briefing, I conclude that the parties intended to import the strictures of Section 145. Accordingly, my determination of the

---

[38] While Current is not subject to the DGCL, it is subject to the Delaware Limited Liability Company Act (the "LLC Act"). Section 18–108 of the LLC Act "grants LLCs broad authority to provide for indemnification by contract in their agreements." *Senior Tour Players 207 Mgmt Co. LLC*, 853 A.2d at 127 (referring to 6 *Del. C.* § 18–108). Furthermore, "it is 'the policy of the [LLC Act] to give maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements.'" *Id.* (quoting 6 *Del. C.* § 18–1101(b)).

[39] *See* 8 *Del. C.* § 145(a) ("A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) *by reason of the fact* that the person is or was a director, officer, employee or agent of the corporation, . . .") (emphasis added).

16

Plaintiffs' right to advancement is informed by the case law interpreting that section.[40]

This Court has held that an action is brought "by reason of the fact" of a defendant's position as an officer or director if a "nexus or causal connection" exists between the underlying proceedings and the defendant's "official corporate capacity."[41] The requisite "nexus or causal connection" exists if "corporate powers were used or necessary for the commission of the alleged misconduct,"[42] and may be established "even if the cause of action does not specify a claim of breach of fiduciary duty owed to the corporation."[43] Although the Court has found that the "by reason of the fact" standard is generally interpreted broadly in favor of advancement,[44] the standard should not be construed to implicate every claim

---

[40] *See Costantini v. Swiss Farm Stores Acquisition LLC*, 2013 WL 6327510, at *4 (Del. Ch. Dec. 5, 2013) ("As the parties chose to import language into the Operating Agreement—'by reason of the fact'—from 8 *Del C.* § 145(a)-(b), case law interpreting that statutory provision bears on my understanding of the Operating Agreement's language.").

[41] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005) ("[W]e hold that if there is a nexus or causal connection between any of the underlying proceedings contemplated by section 145(e) and one's official corporate capacity, those proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct.") (citations omitted).

[42] *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007) (citations omitted).

[43] *Id.* (citing *Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *7 n.35 (Del. Ch. May 3, 2002)).

[44] *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1050 (Del. 2014) ("Under Delaware law, '[t]he "by reason of the fact" standard, or the "official capacity" standard, is interpreted broadly and in favor of indemnification and advancement.'") (quoting *Underbrink v. Warrior Energy Servs. Corp.*, 2008 WL 2262316, at *7 (Del. Ch. May 30, 2008)).

brought against a current or former officer or director.[45] For example, advancement rights do not attach "when the parties are litigating a specific and personal contractual obligation that does not involve the exercise of judgment, discretion, or decision-making authority on behalf of the corporation."[46]

In the Underlying Action, Al Jazeera's Counterclaims allege seven counts against Gore and Hyatt, most of which fundamentally relate to the argument that Current breached representations and warranties at the time of the Merger. These allegations form the bulk of Al Jazeera's Claim Certificates seeking indemnification from the disputed Escrow Fund. Six of the counts in the Counterclaims assert that the former members of Current breached the Merger Agreement by failing to indemnify Al Jazeera consistent with its Claim Certificates, and one count seeks a declaratory judgment that Current's former members must indemnify Al Jazeera for those claims identified in the disputed Claim Certificates. In relief, Al Jazeera seeks, among other things, an order compelling the "Counterclaim-Defendants"—that is, Hyatt and Gore—"to indemnify Al Jazeera for the Damages claimed pursuant to the Claim Certificates delivered to Hyatt as Members' Representative."[47] In addition, Al Jazeera seeks "compensatory damages in an amount to be determined at trial for

---

[45] *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, at *3 (Del. Ch. Jan. 30, 2004) (noting that "'by reason of the fact' is not construed so broadly as to encompass every suit brought against an officer and director").

[46] *Paolino v. Mace Sec. Intern., Inc.*, 985 A.2d 392, 403 (Del. Ch. 2009).

[47] Counterclaims 234–35.

18

*all* injuries suffered as a result of the Counterclaim-Defendants' breach of contract."[48] Therefore, based on the relief originally sought in Al Jazeera's Counterclaims, Hyatt and Gore faced some quantum of individual liability. However, at oral argument Al Jazeera clarified the relief it seeks, representing to the Court that its Counterclaims are limited to the Escrow Fund.[49] While I disagree that its requested relief was so limited on the face of its original pleadings, I found that Al Jazeera was estopped from seeking relief beyond the Escrow Fund based on that representation.

Al Jazeera argues that the sole question before the Court with respect to the Counterclaims is whether Hyatt, as Members' Representative, properly rejected Al Jazeera's Claim Certificates. Therefore, according to Al Jazeera, the Counterclaims question only Hyatt's action in his role as Members' Representative and do not reach actions taken by Hyatt or Gore in their capacity as former officers and directors. Hyatt and Gore, in response, argue that, while they do not face liability in their capacity as officers and directors in the Underlying Action, the Counterclaims nonetheless require them to defend their actions as former officers and directors.

The Plaintiffs argue that their position is supported by then-Master Legrow's

---

[48] *Id.* at 235 (emphasis added).
[49] Oral Argument Tr. 6:12–20 ("THE COURT: Do the counterclaims in the underlying suit seek to recover beyond the escrow account? MR. REED: They do not. THE COURT: Just so we're all clear, because I know there was some issue of it, I am planning to rely on that representation so judicial estoppel would arise. MR. REED: Absolutely.").

final report in *Rizk v. Tractmanager, Inc.*[50] In *Rizk*, following Arsenal Capital Partners' acquisition of Tractmanager, Inc. ("Tractmanager"), Rizk, Tractmanager's former CEO, and other former stockholders were sued in New York state court for breach of contract stemming from alleged misrepresentations in the merger agreement. In response, Rizk filed suit in this Court seeking advancement for fees and expenses incurred in defense of the claims asserted in New York. Like Al Jazeera here, the defendant argued that Rizk was not entitled to advancement in his former capacity as officer and director because Rizk was sued for misrepresentations made in his capacity as a seller.[51] Master Legrow found that Rizk was entitled to advancement, but noted that the case presented a "thorny issue that turns on the particular facts of [the] case." Ultimately, however, the Master determined that the claim for breach of contract was "inextricably [] intertwined" with the action Rizk took in his former capacity as CEO. Furthermore, the Master found that, in order to prevail in the New York action, Rizk was necessarily required "to defend his actions as CEO, and possibly disprove the allegations that he acted improperly in that capacity."[52]

---

[50] *Rizk v. Tractmanager, Inc.*, C.A. No. 9073-ML (Del. Ch. May 30, 2014) (MASTER'S FINAL REPORT).

[51] Specifically, the defendant in *Rizk* argued that the sellers "made a series of representations and warranties in the Merger Agreement, placed money and equity in escrow to cover 'potential indemnification liabilities' associated with breaches of those representations and warranties, and that those escrowed funds are subject of the breach of contract claim." *Id.*

[52] *Id.*

20

I find Master Legrow's reasoning persuasive to my analysis here. Although the Counterclaims appear on their face to merely implicate Hyatt's role as Members' Representative, the resolution of the validity of the Claim Certificates in the Underlying Action, in part, necessarily requires Hyatt and Gore to defend their actions as former officers and directors, for which they are contractually entitled to advancement. Without such a (successful) defense, the rights of Hyatt and Gore (and the other former members of Current) in the Escrow Fund will be forfeit. Accordingly, I will examine each count in the Counterclaims, and the issues raised in the corresponding Claim Certificates, to determine whether the allegations establish sufficient "nexus" to Hyatt's and Gore's "corporate powers" such that advancement of fees and expenses is appropriate. [53]

In Counts I, II, and III, Al Jazeera seeks validation of those Claim Certificates that allege that Current breached the Merger Agreement by falsely representing that Current was in compliance with its distributor agreements, including the MFN provisions[54] therein. Specifically, Al Jazeera points to three distributors—AT&T Services, Inc. ("AT&T"), Dish Network, LLC ("DISH"), and DirecTV, LLC ("DirecTV")—that have initiated disputes with Al Jazeera alleging that Current was

---

[53] I note that the following analysis does not describe each Count in its entirety, but instead highlights those allegations that are relevant to my determination of advancement.

[54] Generally speaking, "MFN provisions" are undertakings that the contracting party will be treated at least as well as other distributors similarly situated.

in violation of its MFN provision at the time of the Merger. For example, Al Jazeera asserts that Hyatt and Gore, in a rush to close the deal, agreed to pay DirecTV $10 million to obtain its consent to the change in ownership of Current.[55] According to Al Jazeera, DISH alleged that the payment to DirecTV violated the MFN provision in its distribution agreement with Current and demanded a similar payment. In its Claim Certificate, therefore, Al Jazeera requests indemnification for the additional $10 million payments— and other payments—that Al Jazeera alleges it is and will be required to make as the result of Current's alleged breach of MFN provisions. Hyatt, as Members' Representative, rejected the Claim Certificate, prompting Al Jazeera to file its Counterclaims for breach of contract.

In order to defend Hyatt's rejection of the Claim Certificates, Hyatt and Gore, like the plaintiff in *Rizk*, will be required to defend their actions as officers and directors. The underlying pleadings are telling. According to Al Jazeera's Counterclaims, Current's distribution contracts were "the most critical part of the Merger Agreement."[56] As a result, Al Jazeera specifically negotiated the inclusion of representations and warranties in the Merger Agreement that would remain in effect after the Merger to avoid responsibilities for "liabilities incurred by [Current] while [it] was being run by Gore and Hyatt."[57] Al Jazeera explains in its

---

[55] Counterclaims ¶¶ 55–56.
[56] *Id.* at ¶ 49.
[57] *Id.* at ¶ 10.

Counterclaims that the protections in the Merger Agreement were important because "the distributors' relationships with Hyatt had deteriorated over time."[58] Specifically, Al Jazeera notes that, pursuant to the Merger, "Hyatt assumed responsibility for obtaining the consent agreements,"[59] and that, ultimately, the "process proved very difficult for Hyatt as distributors had developed a dislike for Hyatt as a result of his mismanagement of Current."[60] Therefore, the underlying basis of the Claim Certificates create a significant likelihood that Hyatt and Gore will be forced to defend actions that they took as officers and directors in order to successfully defend the Counterclaims and vindicate their rights to the funds in escrow. Accordingly, Hyatt and Gore are entitled to advancement for Counts I, II, and III.

In Count IV, Al Jazeera seeks validation of a Claim Certificate that alleges that Current's former members agreed in the Merger Agreement to indemnify Al Jazeera for fifty percent of the expenses it incurred to perfect the "termination, cancelation, discontinuance or nonperformance" of a pre-existing distribution agreement between Al Jazeera—*not* Current—and Time Warner Cable, Inc. ("TWC"). Prior to the Merger, Al Jazeera and TWC entered into a distribution

---

[58] *Id.* at ¶ 81.
[59] *Id.* at ¶ 51.
[60] *Id.* at ¶ 52.

23

agreement relating to the distribution of the Al Jazeera English ("AJE") service.[61]

According to the Counterclaims, before closing the Merger, the parties agreed that the AJE distribution agreement with TWC needed to be terminated. The parties, therefore, amended the Merger Agreement to require Current's former members to indemnify Al Jazeera for fifty percent of the expenses that Al Jazeera incurred to terminate its distribution agreement with TWC.[62] Al Jazeera asserts that Hyatt, as Members' Representative, rejected its Claim Certificate requesting indemnification of half of those expenses, which, according to Al Jazeera, Hyatt is required contractually to reimburse in accordance with the Merger Agreement, as amended. Unlike Counts I, II, and III, this Count focuses solely on the terms of the Merger Agreement and does not require Hyatt and Gore to defend actions taken in their official capacity. Accordingly, Hyatt and Gore are not entitled to advancement for Count IV.

In Count V, Al Jazeera seeks validation of a Claim Certificate that asserts that Al Jazeera was forced to make a settlement payment to CBS Broadcasting, Inc. ("CBS") to settle a dispute between Current and CBS that existed at the time of the Merger. Current disclosed the dispute with CBS in the Merger Agreement. According to Al Jazeera, however, Current had represented that the resolution of the

---

[61] *Id.* at ¶ 120.
[62] *Id.* at ¶ 121.

claim would not result in a substantial payment to CBS.[63]  Like Counts I, II, and III, this claim implicates Hyatt's and Gore's official capacities as they will be forced to defend their negotiations with CBS as well as the characterization in the Merger Agreement of the resolution of those negotiations. Therefore, Count V is an advanceable claim.

In Count VI, Al Jazeera seeks validation of a Claim Certificate that requests reimbursement of defense costs that Al Jazeera allegedly paid on behalf of Hyatt as Members' Representative.  Hyatt, in his capacity as Members' Representative, controlled the defense of a third party claim—referred to by the parties as the "Terenzio Claim"—raised against Current after the Merger.[64]  According to Al Jazeera, the Merger Agreement provides that the Members' Representative is responsible for all costs associated with defending third party claims.[65]  However, without waiving its contention that the Members' Representative is responsible for those costs, Al Jazeera agreed to pay Hyatt's fees and expenses associated with defending the Terenzio Claim with an understanding that, in the event that the balance of the Escrow Fund was insufficient to indemnify Al Jazeera for those costs, it could recover the costs directly from the Members' Representative.[66]  According

---

[63] *Id.* at ¶ 123.
[64] *Id.* at ¶ 127.
[65] *Id.*
[66] *Id.*

to Al Jazeera, Hyatt has denied any such responsibility and has objected to its claim for reimbursement in breach of the Merger Agreement.[67]

The crux of the dispute in Count VI is whether Al Jazeera may seek reimbursement from Hyatt for fees and expenses beyond the balance of the Escrow Fund. This dispute, therefore, will turn on the arrangement between Al Jazeera and Hyatt, as Members' Representative, as well as the interpretation of the Merger Agreement, and not Hyatt's and Gore's actions as directors and officer. Accordingly, Count VI does not create the requisite "nexus" to Hyatt and Gore in their former capacity and is a non-advanceable claim.[68]

Finally, Count VII seeks numerous declarations that the former members of Current must indemnify Al Jazeera for the Claim Certificates at issue in Counts I through VI. Therefore, Count VII is advanceable to the extent it seeks declarations related to those counts that are advanceable—namely, Counts I, II, III, and V.

*C. Fees on Fees and Interest*

Hyatt and Gore argue that they are entitled to their legal fees and expenses incurred in this action. This Court has found that "plaintiffs who succeed in

---

[67] *Id.* at ¶ 176.

[68] Hyatt and Gore argue that Al Jazeera previously acknowledged that the Terenzio Claim encompasses the requisite nexus to the Plaintiffs' capacities as directors and officer, and that Al Jazeera has thus "conceded" that Counterclaim Count VI is advanceable. The Plaintiffs' argument, however, misconstrues Al Jazeera's Counterclaims. The underlying Terenzio Claim involves, in part, whether Hyatt and Gore are liable to the plaintiff there for a "finder's fee" in relation with the sale of Current to Al Jazeera; defenses costs of that claim are advanceable. The Counterclaim, however, does not implicate Hyatt's and Gore's underlying liability.

prosecuting a request for advancement or indemnification are entitled to receive fees on fees."[69] Accordingly, Hyatt and Gore are entitled to reimbursement of their legal fees and expenses incurred to litigate this action to the extent they have been successful in establishing a right to advancement.

The Plaintiffs also request an award of pre- and post-judgment interest. In Delaware, "prejudgment interest is awarded as a matter of right."[70] Hyatt and Gore are entitled, therefore, to pre-judgment interest from the date on which their demand and undertakings were delivered to Al Jazeera.[71] For those expenses incurred after the demand and undertaking were delivered, Hyatt and Gore are entitled to pre-judgment interest from the date those expenses were paid.[72] Furthermore, "Delaware courts routinely grant post-judgment interest in advancement cases."[73] Hyatt and Gore are entitled to post-judgment interest accordingly.

## IV. CONCLUSION

Based on the foregoing, Counts I, II, III, and V, and the related portions of Count VII are advanceable. In addition, the Plaintiffs are entitled to fees on fees

---

[69] *Zaman v. Amedeo Holdings, Inc.*, 2008 WL 2168397, at * 39 (Del. Ch. May 23, 2008) (citing *Stifel Fin. Corp.*, 809 A.2d at 561).

[70] *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992) (citing *Moskowitz v. Mayor & Council of Wilmington*, 391 A.2d 209 (Del. 1978)).

[71] *Underbrink*, 2008 WL 2262316, at *19 ("A party seeking advancement is entitled to interest from the date on which the party 'specified the amount of reimbursement demanded and produced his written promise to pay.'") (quoting *Roven*, 603 A.2d at 826 n.10).

[72] *Id.*

[73] *Id.* (citations omitted).

related to those advanceable claims, as well as pre- and post-judgment interest. The

parties should submit a form of order consistent with my decision.